## WYBLE v. LAFLEUR (ÆTNA LIFE INS. CO., Intervener).

### No. 1492.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1935.

L. B. Sandoz, of Opelousas, for appellant.

Dubuisson & Dubuisson, of Opelousas, for intervener.

A. M. Guilbeau, of Opelousas, for appellee.

LEBLANC, Judge.

The plaintiff herein, Onezime Wyble, was formerly employed by the Louisiana highway commission, as a motorcycle highway patrolman. On the morning of September 13, 1933, while riding his motorcycle on Main street in the city of Opelousas, he collided with an automobile being driven by the defendant, J. Sinia Lafleur, at the intersection of that street with Bloch street, and sustained a severe fracture of the tibia and fibula of the right leg. This suit was instituted by him to recover damages against the defendant, in the sum of $20,300, alleged to have been suffered as a result of the accident.

The Ætna Life Insurance Company, which carried compensation insurance for the plaintiff's employer, Louisiana highway commission, and which acknowledged its liability by having made substantial payments already, intervened in the suit and prayed for judgment recognizing its right to be paid by preference over the plaintiff or any other parties, out of any judgment that may be rendered in favor of the plaintiff and against the defendant, the full amount of such payments as it had already made and such others as it may become obligated to pay as compensation.

Main street, which is paved, runs north and south, and forms that part of state highway No. 5, known as Pershing Highway, which runs through the city of Opelousas. Bloch street has a dirt surface and it runs east and west. It is not disputed that traffic on Main street enjoys the right of way over that using Bloch street.

Plaintiff, at the time of the accident, was traveling north on Main street and the defendant west on Bloch street. Plaintiff claims that the defendant was negligent when, in entering the intersection at about the same time as he (plaintiff) did, instead of according the right of way to traffic on Main street, he recklessly, and in violation of the municipal ordinance, drove his car into the intersection at a speed of from eighteen to twenty miles per hour, heedless of his close approach from the south on Main street. He further charges that even after having entered the intersection, plaintiff could have averted the accident by turning his car either to the right or left, but made no effort to do so.

The defense is a denial of the negligence charged, and, in the alternative, a plea of contributory negligence on the part of the plaintiff in driving a high powered motorcycle at a rate of speed in excess of that provided for by municipal ordinance, in not keeping a proper lookout to see what traffic there might be on the main highway, and in not having his motorcycle

under control and failing to exercise the last clear chance to avoid the accident.

The district judge sustained defendant's plea of contributory negligence, and from a judgment rejecting the plaintiff's demand, the latter has appealed.

Although the preponderance of the testimony shows that the defendant was going at a very moderate rate of speed as he neared the intersection and, in that respect, had his car under control, the evidence is equally as convincing that he did not take the necessary precaution in keeping a proper look out for traffic that might be approaching on the right of way street. Had he been looking, he had full opportunity, and should have seen plaintiff's motorcycle and an automobile in time to have brought his car to a stop and avert the accident, considering the slow rate of speed at which he was going. It is unnecessary, however, to dwell at length on the negligence of the defendant, which we think has been convincingly shown, as the vital issue in the case is involved in the alleged contributory negligence of the plaintiff.

Plaintiff's testimony is to the effect that on the morning of the accident he followed his usual routine, after leaving his home at about 8 o'clock, of going to the Waldorf Hotel where there generally were some people waiting to see him. After he left the hotel, he patroled the streets of the city and after a while parked on Landry street near Mr. Charles Boagni's home, watching the traffic at that point. While there, he was informed by some one that his wife was trying to reach him over telephone. Instead of going to a telephone, he decided to go to his home to find out why he was wanted, and on his way was stopped by some one who told him that there was a long distance call for him from Lafayette. He knew that recently convicts had escaped from the penitentiary at Angola and surmised that the message was from his superior officer at Lafayette and had some connection with this matter. He decided, however, that he would answer the call from his home, so continued on his way there. He states that some one again tried to stop him near a filling station on Main street, one block north of Landry street, but he would not stop because he "didn't have any time to spare."

With his mind thus engaged, it is reasonable to assume that plaintiff was driving his motorcycle at a rather rapid rate of speed up Main street at that moment, and no doubt a good bit in excess of the twenty miles per hour rate as fixed by municipal ordinance for the city of Opelousas. His counsel attempt to justify his higher rate of speed on the ground that the State Highway Regulatory Act, No. 21 of 1932, itself provides that speed limitations are not applicable to highway patrolmen or other peace officers in the chase or apprehension of violators of the law. But, under the facts as already shown, plaintiff was not at this moment engaged in the discharge of any such duty. He was on his way to answer a telephone message which he merely surmised had some connection with the apprehension of escaped convicts. That provision of the statute, therefore, cannot be successfully invoked in his behalf.

Continuing with the plaintiff's recital of facts, we find, according to him, that as he neared the Bloch street intersection, he was trailing an automobile being driven at the time by a Mr. Umstead. He says himself that he does not like to follow immediately in the rear of a car, so he proceeded to pass ahead of the Umstead car. At that time he says that he was within one hundred feet, possibly seventy-five feet, of the intersection. He says that he speeded up a little to pass ahead of the Umstead car, and as he passed it he recognized Mr. Umstead and waved his hand in some form of salutation to him. He was then about thirty feet from the middle of the intersection, saw Mr. Lafleur coming on very slowly from Bloch street, took it for granted that he would yield him the right of way, so he continued on his course on the right side of the street. It was only when he saw that it was possible, as he puts it, that Lafleur would not stop that he swerved his motorcycle to the left in an effort to avoid a collision.

Mr. Umstead's testimony, and he is plaintiff's witness, is to the effect that he was one block south of the corner of Main and Bloch streets, when, looking into the rear vision mirror of his car, he saw Mr. Wyble's motorcycle back of him. Being a stranger in the city, he became apprehensive that he might be exceeding the speed limit and probably was being followed for a violation of the law, so he slackened his speed to about twenty miles an hour. He says that Wyble passed ahead of his car when they were about thirty or thirty-five feet south of Bloch street, and he esti-

mates his speed then at between twenty-five and twenty-eight miles per hour. In this respect, it is noted that his testimony is at some variance with that of Wyble who states that he passed Umstead at from seventy-five to one hundred feet from the intersection. Bearing in mind that Umstead is the plaintiff's witness and that his testimony on this important point has to be reconciled with that of the plaintiff, we feel safe in adopting an average between their estimates and in holding that the point at which the motorcycle passed ahead of the automobile was between fifty-five and sixty-five feet from the intersection, and that it was then traveling at a speed of approximately twenty-five or twenty-six miles per hour.

■ With an intersecting street only fifty-five or sixty-five feet ahead of him, we believe that it was a dangerous maneuver for plaintiff to overtake another vehicle in motion ahead of him. In order to do so, he necessarily had to speed his motorcycle, as indeed he did in this case, and it became next to impossible for him to safely bring it ahead of the overtaken car and have it under proper control in the short distance that was left before he entered the intersection. Under our State Highway Regulatory statute, Act No. 21 of 1932, in section 3, part of which is devoted to prescribing the rules of the road, we find that rule 7, paragraph (e), specifically prohibits the driver of a vehicle from overtaking another vehicle proceeding in the same direction, "at any steam, electric or other railroad grade crossing or any intersection of the highway, unless permitted or instructed to do so by a duly authorized traffic or police officer." The words "at any intersection" we understand to mean within a reasonable distance of the intersection, and whilst we do not want to be understood as fixing that distance at any given number of feet, we do believe in this case, considering the rate of speed at which it became necessary for the plaintiff to drive his motorcycle in order to get ahead of the Umstead car, that it was a dangerous thing to do and he should not have attempted it when only some fifty-five or sixty feet from the street corner. A simple arithmetical calculation will show that, going at twenty-five or twenty-six miles per hour, as we have found he was at the time, he was covering between thirty-six and thirty-eight feet per second and consequently he had less than two seconds in which to bring his motorcycle back to its proper place on the street and slacken his speed to such rate as to give him proper control over it to meet any emergency which might present itself in the intersection.

■ It is strenuously urged, on behalf of the plaintiff, that he had the right to take advantage of his position on the favored street and proceed across the intersection, expecting, as he did, that traffic on the less favored street would yield the right of way. As a matter of fact, the plaintiff justifies his action in continuing on in the intersection at the rate of speed he was, on the assumption that the defendant would stop and let him go on. He says that when he was about twenty feet from the corner of the sidewalk he saw Lafleur coming on at a slow rate of speed and "took it for granted that he would yield the right of way, because I had it, according to law. * * *" But instead of bringing his motorcycle under further control, anticipating also, as he might have, that the defendant would not yield, he continued heedlessly on his path across the intersection and did nothing to avoid the collision which he saw was imminent, until it was too late. Under the situation that presented itself, he had a duty equally as definite as had the defendant and had no right to rely entirely on the assumption which he says he did. On this point, we quote from Blashfield, Cyclopedia of Automobile Law and Practice, vol. 1, page 195, § 1027:

"Where two persons are driving on lines that visibly intersect, the general obligation of care becomes for each a definite duty, and if, as they approach, their continuity and mutual movements should suggest a probable or even possible collision, neither is entitled to act on the assumption that the other will give way. Thus, where two drivers, coming from different streets, enter an intersection at about the same time, each on his proper side of the street, and a collision is imminent, it may be negligence for one driver to assume that the other will pass behind him and to do nothing to avoid a collision; and a motorist, although in a favored position in approaching an intersection, must exercise reasonable care to avoid a collision after he becomes, or in the exercise of reasonable care may become, aware that an automobile coming from intersecting street is not going to yield the right way."

464

After a careful consideration of the record in this case and of the law governing the conduct of drivers of automotive vehicles at intersections such as the one we are here concerned with, we are convinced that notwithstanding the defendant's negligence, plaintiff himself was equally as negligent, and having by that negligence contributed to the accident, he cannot recover.

For the foregoing reasons, the judgment herein appealed from is affirmed at the costs of the appellant.